IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

KEHINDA MITCHELL,            )
     Plaintiff,           )
                            )    Case No. 18-cv-07357
v.                       )    Honorable Gary Feinerman
                            )
CITY OF CHICAGO, Chicago Police Detectives )
MICHAEL MCDERMOTT, ANDY JONES, K. )
GLYNN, and JACK WILKINS, Youth Officer )
NAPOLEON STEVENSON, and Officer K. )
GROSS, Cook County Assistant State's Attorney )
SHARON JEFFERSON, COOK COUNTY, )
ILLINOIS, and Unknown Current or Employees )
of the City Of Chicago, )
                            )
     Defendants.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO THE CITY
OF CHICAGO'S MOTION TO BIFURCATE *MONELL* CLAIMS**

**TABLE OF CONTENTS**

Introduction ........................................................................................................................... 1

BACKGROUND ................................................................................................................... 3

DISCUSSION ........................................................................................................................ 4

I.     THE CITY'S LIABILITY DOES NOT DEPEND ON INDIVIDUAL LIABILITY,
        AND TRIALS ON THE *MONELL* CLAIMS WILL CERTAINLY TAKE PLACE .... 5

II.    BIFURCATION WILL DUPLICATE THE PROCEEDINGS, WASTE RESOURCES,
       AND INCONVENIENCE WITNESSES ................................................................. 8

      A.  The City's Proposal Would Massively Waste Resources ......................................... 8

      B.  The City's Concerns About Burden are Misplaced ............................................... 10

III.   THE BALANCE OF PREJUDICE WEIGHS AGAINST BIFURCATION ...................... 13

IV.   BIFURCATION WOULD VIOLATE THE SEVENTH AMENDMENT ......................... 13

V.    THE "LIMITED CONSENT TO ENTRY OF JUDGMENT" IS IMPROPER ................. 14

VI.   OTHER STRONG INTERESTS WEIGH AGAINST BIFURCATION ........................... 14

Conclusion ........................................................................................................................... 15

## TABLE OF AUTHORITIES

*A.L. Hansen Mfg. v. Bauer Products*, 2004 WL 1125911 (N.D. Ill. May 18, 2004) .......................................4

*Allison v. Gallagher*, 2012 WL 4760863 (N.D. Ill. Oct. 5, 2012) ...........................................................5

*Andersen v. City of Chicago*, 2016 WL 7240765 (N.D. Ill. Dec. 14, 2016) ...........................................7, 8

*Awalt v. Marketti*, 2014 WL 1161500 (N.D. Ill. Apr. 9, 2012)...................................................5, 9, 11, 13

*Baskins v. Gilmore*, No. 17 C7566, Dkt. 135 (N.D. Ill. Mar. 25, 2019) ...........................................5, 8

*Bell v. Chicago*, 2010 WL 432310 (N.D. Ill. Feb.3, 2010) ...............................................................5, 8

*Blyden v. Mancusi*, 186 F.3d 252 (2d Cir. 1999)................................................................................14

*Bradley v. Chicago*, 2010 WL 432313 (N.D. Ill. Feb.3, 2010) .........................................................5, 8

*Cage v. Chicago*, 2010 WL 3613981 (N.D. Ill. Sep. 8, 2010)...........................................................5, 8

*Carter v. Dart*, 2011 WL 1466599 (N.D. Ill. Apr.18, 2011).......................................................5, 6, 13

*Castano v. American Tobacco*, 84 F.3d 734 (5th Cir. 1996) ............................................................15

*Clarett v. Suroviak*, 2011 WL 37838 (N.D. Ill. Jan. 3, 2011) ...........................................................5

*Clipco v. Ignite Design*, 2005 WL 2861032 (N.D. Ill. Oct. 28, 2005) ...........................................11, 14

*Coleman v. Peoria*, 2016 WL 5497363 (C.D. Ill. Sep. 27, 2016) .......................................................9

*Estate of Loury v. City of Chicago*, 2017 WL 1425594 (N.D. Ill. Apr. 20, 2017) ...............................5

*Estate of McIntosh v. Chicago*, 2015 WL 5164080 (N.D. Ill. Sep. 2, 2015)...................................5, 7

*Fields v. Chicago*, 2017 WL 4553411 (N.D. Ill. Oct. 12, 2017) .......................................................4

*Giles v. Ludwig*, 2013 WL 6512683 (N.D. Ill. Dec. 6, 2013) ...........................................................5

*Haven v. Polksa*, 215 F.3d 727 (7th Cir. 2000)................................................................................14

*Houseman v. U.S. Aviation*, 171 F.3d 1117 (7th Cir. 1999)......................................................4, 13

*Houskins v. Sheahan,* 549 F.3d 480 (7th Cir. 2008) ......................................................................10

*Jones v. Chicago*, 856 F.2d 985 (7th Cir. 1988)..............................................................................4

*King v. Evans*, 2015 WL 4397761 (N.D. Ill. July 17, 2015)..............................................................5

*Krocka v. Chicago*, 203 F.3d 507 (7th Cir. 2000) ............................................................4

*Los Angeles v. Heller*, 475 U.S. 706 (1986) .............................................................5, 7

*Martinez v. Cook County*, 2011 WL 4686438 (N.D. Ill. Oct. 4, 2011) ....................................5, 8

*Matter of Rhone-Poulenc Rorer*, 51 F.3d 1293 (7th Cir. 1995) ........................................... 14

*McLaughlin v. State Farm*, 30 F.3d 861 (7th Cir. 1994) ...................................................13

*Medina v. Chicago*, 100 F. Supp. 2d 893, 896 (N.D. Ill. 2000) ..........................................15

*Monterey v. Del Monte Dunes*, 526 U.S. 687 (1999) ......................................................15

*Ott v. Milwaukee*, 2010 WL 5095305 (E.D. Wis. Dec. 8, 2010) ...........................................5

*Owen v. Independence*, 445 U.S. 622 (1980) ......................................................... 11, 15

*Pickett v. Dart*, 2014 WL919673 (N.D. Ill. Mar. 10, 2014) ............................................. 5

*Ratliff v. Chicago*, 2012 WL 5845551 (N.D. Ill. Nov. 19, 2012) .........................................13

*Real v. Bunn-O-Matic*, 195 F.R.D. 618 (N.D. Ill. 2000) ...................................................4

*Swanigan v. Chicago*, 775 F.3d 953 (7th Cir. 2015) .................................................5, 14, 15

*Terry v. Cook County*, 2010 WL 2720754 (N.D. Ill. July 8, 2010) ..................................5, 10, 13

*Thomas v. Cook County*, 604 F.3d 293 (7th Cir. 2009) ..........................................4, 5, 8, 10

*U.S. v. Gomez*, 763 F.3d 845 (7th Cir. Aug. 8, 2014) ....................................................13

*Veal v. Kachiroubas*, 2014 WL 321708 (N.D. Ill. Jan. 29, 2014) ........................................7

*Wells v. Coker*, 2014 WL 716518 (C.D. Ill. Feb. 25, 2014) .............................................5

*Wiggins v. Burge*, 173 F.R.D. 226 (N.D. Ill. 1997) ....................................................11

*Wyatt v. Cole*, 504 U.S. 158 (1992) ...................................................................15

## STATUTES AND OTHER AUTHORITIES

7 FEDERAL PRACTICE & PROCEDURE § 2388 (2016) ........................................................4

9A FEDERAL PRACTICE AND PROCEDURE § 2391 (2016) ....................................................14

FED. R. CIV. P. 42(b)..................................................................................4

## Introduction

Plaintiff Kehinda Mitchell, just a teenager at the time, was arrested and prosecuted for the 1992 murder of Howard Shell and aggravated battery of John McDaniels and Kevin Brahm—crimes he absolutely did not commit. Dkt. 1, ¶1. Plaintiff, like scores of others in the City of Chicago, was convicted on the basis of a fabricated confession by CPD officers with a long and sordid history of coercing and fabricating false statements from witnesses and suspects through physical, verbal and psychological abuse—a systemic failure in Chicago. As a consequence, Plaintiff seeks to hold not just the police officers responsible for his wrongful conviction accountable for their misdeeds, but also the City of Chicago as well.

This Court is probably becoming familiar with the City of Chicago's consistent refrain in (nearly every) §1983 suit involving a wrongful conviction and a *Monell* claim that bifurcation must be granted. But those arguments ring hollow, particularly where the City has already been ordered in other litigation to produce the same materials at issue here. As a result, bifurcation is not about saving time or costs. Nor is it actually about "streamlining" this litigation. Instead, the City's clear goal is to prevent any civil-rights plaintiff from having even the *opportunity* to hold the *City* accountable for its actions in causing scores of wrongful convictions. That goal being clear, the method is also familiar: to use bifurcation to make it more costly and time consuming for a Plaintiff to pursue his claims against the City. This Court should reject this attempted strategy. Bifurcation is supposed to be the exception under the federal rules rather than the go-to rule sought by the City. In this case, bifurcation is unwarranted for at least six reasons.

First, under established law and contrary to the City's argument, Plaintiff's *Monell* claims do not depend on whether any individual Defendant is liable: as juries have found in three recent trials, the City's *Monell* liability extends beyond simply the actions of the individual defendants.

1

Second, bifurcation will not save time or resources. On the contrary, it would multiply the work of the Court and the parties, increase costs, and inconvenience witnesses. The *Monell* claims will be litigated regardless of the outcome of the individual case, and so bifurcation will only serve to duplicate the proceedings. That duplication would be particularly inefficient given that much of the evidence relating to *Monell* claims is also relevant to the individual claims. Based on past experience, bifurcation spawns disputes about what is or is not "*Monell* discovery," further wasting time and resources.

Third, the City's argument that bifurcation is necessary to avoid prejudice to Defendants is incorrect and, at a minimum, is not a reason to bifurcate discovery. The City identifies no real prejudice it will suffer. With respect to the individuals, most of the *Monell* evidence is admissible against them at trial without any danger of unfair prejudice. Moreover, any concern that they might be prejudiced can be managed with limiting instructions. And even if there were some danger of prejudice, it would not justify bifurcation at the start of the case. On the other hand, Plaintiff would suffer great prejudice if the City's motion were granted, and that prejudice must be considered.

Fourth, the City's position cannot be adopted because it violates the Seventh Amendment. The City proposes that the Court would oversee discovery, decide dispositive motions, oversee a trial against individual Defendants, and then reopen *Monell* discovery, entertain a new round of dispositive motions, and hold a second trial in each case. But two trials will necessarily require two separate juries to consider the same factual issues. The Seventh Amendment forbids that approach.

Fifth, the City's proposal of a "Limited Consent to Entry of Judgment," pursuant to which the City would deny liability but accept judgment against it if Plaintiff first establish liability against the individual Defendants, is procedurally improper and it cannot be used to eliminate Plaintiff's *Monell* claims. The City's proposed consent should be ignored.

Sixth and finally, there are important non-monetary reasons for the *Monell* claims to proceed. A verdict on the *Monell* claims is an independent basis of liability that supports a judgment, and so the *Monell* claims have value for that reason as well. In addition, the City's policies at issue have been and remain terribly broken. Those policies, which have persisted well into the 21st century, have imposed a cost in lives lost to wrongful incarceration that is staggering and that demands reform. Plaintiff brings this suit in part to ensure that meaningful reforms take place.

## BACKGROUND

Plaintiff was wrongly convicted of murder and aggravated battery in 1992. Dkt. 1 at ¶ 1. Plaintiff alleges virtually the only evidence implicating him in the crimes for which he was wrongfully convicted was a purported oral confession that the then-15-year old gave to Defendant McDermott. *Id.* at ¶¶ 3, 31-46. Plaintiff alleges that confession was absolutely false: Defendant McDermott isolated Plaintiff from his mother and attorney and verbally threatened him in an attempt to get him to confess. When he refused, Defendant McDermott (along with other officers) fabricated that Plaintiff voluntarily confessed to murder. *Id.* Defendants also withheld information from Plaintiff's criminal defense attorneys, including but not limited to the falsity of their reports and other exculpatory evidence. *Id.* at ¶¶ 30, 54, 90-91, 103.

Plaintiff's wrongful conviction was also caused by the City's policies. *Id.* at ¶¶ 68-82, ¶¶ 115-119. Plaintiff's *Monell* theories include: (1) the individual defendants engaged in a pattern and practice of abuse of coercing and fabricating confessions from witnesses and suspects in violation of their constitutional rights; (2) the numerous occasions in which Defendant McDermott and others coerced and fabricated confessions from suspects was facilitated by a pervasive "code of silence" that also amounted to a *de facto* municipal policy, pattern, and practice of engaging in abuse and fabrication of evidence; and (3) the City failed to train, supervise, and discipline its officers—particularly McDermott, who engaged in a pattern of abuse resulting in more than 20 allegations of

misconduct of the same nature. *Id.* Moreover, and important here, the City had a practice of suppressing exculpatory evidence, which were kept within the Chicago Police Department but were never transmitted to state prosecutors, criminal defendants, or their attorneys. Three federal juries have found the City liable for maintaining policies and practices of withholding evidence from state prosecutors, criminal defendants, and their attorneys. *Rivera v. Guevara*, No. 12 C 4428, Dkt. 678 (N.D. Ill. Aug. 3, 2018); *Fields v. Chicago*, 2017 WL 4553411, at *3-4 (N.D. Ill. Oct. 12, 2017); *Jones v. Chicago*, 856 F.2d 985 (7th Cir. 1988).

## DISCUSSION

This Court has discretion to decide claims or issues in separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize." FED. R. CIV. P. 42(b); *Krocka v. Chicago*, 203 F.3d 507, 516 (7th Cir. 2000). The Court must "be satisfied that the decision to bifurcate does not unfairly prejudice the non-moving party." *Houseman v. U.S. Aviation*, 171 F.3d 1117, 1121 (7th Cir. 1999). Bifurcation is the exception, not the rule, and it should not be ordered "unless such a disposition is clearly necessary." *Real v. Bunn-O-Matic*, 195 F.R.D. 618, 619 (N.D. Ill. 2000); FED. R. CIV. P. 42(b), advisory cmts. ("[S]eparation of issues for trial is not to be routinely ordered[.]"); 7 FEDERAL PRACTICE & PROCEDURE § 2388 (2016); *A.L. Hansen Mfg. v. Bauer Products*, 2004 WL 1125911, at *2 (N.D. Ill. May 18, 2004) ("[T]he decision to bifurcate centers on a balance of equities. However, this balance is weighted against bifurcation."). In considering bifurcation, the court "should remain mindful of the traditional role of the factfinder; *i.e.* to make an ultimate determination on the basis of a case presented in its entirety." *Real*, 195 F.R.D. at 620.

Since the Seventh Circuit decided *Thomas v. Cook County*, 604 F.3d 293, 305 (7th Cir. 2009), "the weight of authority holds that bifurcation is now heavily disfavored," *Awalt v. Marketti*, 2014

4

WL 1161500, at *10 n.2 (N.D. Ill. Apr. 9, 2012). That is particularly so in cases of this type, where

bifurcation is routinely denied.[1] The City has provided no justification for bifurcation.

## I. THE CITY'S LIABILITY DOES NOT DEPEND ON INDIVIDUAL LIABILITY, AND TRIALS ON THE *MONELL* CLAIMS WILL CERTAINLY TAKE PLACE

The City argues that its own liability depends on a jury first finding individual liability. Dkt.

58 at 4-8. That is incorrect. "The actual rule," the Seventh Circuit said in *Thomas*, is that "a

municipality can be held liable under *Monell*, even when its officers are not, unless such a finding

would create an *inconsistent* verdict." 604 F.3d 293, 305 (7th Cir. 2010); *see also Swanigan v. Chicago*, 775

F.3d 953, 962 (7th Cir. 2015). Judges in this District analyze the propriety of bifurcation bearing in

mind that a municipal policy can cause a constitutional deprivation even if a jury finds the individual

officers not liable. *See Bonds*, 2018 WL 1316720, at *4-5; *Pickett v. Dart*, 2014 WL919673 (N.D. Ill.

Mar. 10, 2014); *Martinez*, 2011 WL 4686438, at *1; *Cage*, 2010 WL 3613981, at *1. Cases like these, in

which a jury could find a policy caused a constitutional deprivation without finding misconduct by a

particular officer, are different in kind from cases where municipal liability is premised on a

particular officer's use of force, such as *Los Angeles v. Heller*, 475 U.S. 706 (1986).

The City contends that a *Monell* verdict is impossible without individual liability, but their

brief does not explain why a verdict against the City would *necessarily* be inconsistent with a verdict in

---

[1] The City cites a few cases where bifurcation was granted, Dkt. 58 at 5-6, but it omits that the extreme weight of authority is against bifurcation. *Baskins v. Gilmore*, No. 17 C7566, Dkt. 135 (N.D. Ill. Mar. 25, 2019); *McIntosh v. Chicago*, No. 17 C 6357, Dkt. 101 (N.D. Ill. Feb. 13, 2019); *Brent-Bell v. Chicago*, No. 17 C 1099, Dkt. 140 (N.D. Ill. Feb. 5, 2019); *Prince v. Kato*, No. 18 C 2952, Dkt. 65 (N.D. Ill. Nov. 14, 2018); *Sierra v. Guevara*, No. 18 C. 3029, Dkt. 84 (N.D. Ill. Nov. 7, 2018); *Smith v. Burge*, No. 16 C 3404, Dkt. 205 (N.D. Ill. Aug. 9, 2018); *Rivera v. Guevara*, No. 12 C 4428, Dkt. 443 (N.D. Ill. May 18, 2018); *Hood v. Chicago*, No. 16 C 1970, Dkt. 86 (N.D. Ill. Jan. 9, 2017); *Estate of Loury v. City of Chicago*, 2017 WL 1425594, at *5 (N.D. Ill. Apr. 20, 2017); *Estate of McIntosh v. Chicago*, 2015 WL 5164080 (N.D. Ill. Sep. 2, 2015); *King v. Evans*, 2015 WL 4397761, at *2 (N.D. Ill. July 17, 2015); *Wells v. Coker*, 2014 WL 716518 (C.D. Ill. Feb. 25, 2014); *Giles v. Ludwig*, 2013 WL 6512683 (N.D. Ill. Dec. 6, 2013); *Allison v. Gallagher*, 2012 WL 4760863, at *2 (N.D. Ill. Oct. 5, 2012); *Awalt*, 2012 WL 1161500; *Martinez v. Cook County*, 2011 WL 4686438, at *3-4 (N.D. Ill. Oct. 4, 2011); *Carter v. Dart*, 2011 WL 1466599, at *2-5 (N.D. Ill. Apr.18, 2011); *Clarett v. Suroviak*, 2011 WL 37838, at *1-3 (N.D. Ill. Jan. 3, 2011); *Ott v. Milwaukee*, 2010 WL 5095305, at *2 (E.D. Wis. Dec. 8, 2010); *Cage v. Chicago*, 2010 WL 3613981, at *2 (N.D. Ill. Sep. 8, 2010); *Terry v. Cook County*, 2010 WL 2720754, at *1-3 (N.D. Ill. July 8, 2010); *Bell v. Chicago*, 2010 WL 432310, at *2-4 (N.D. Ill. Feb.3, 2010); *Bradley v. Chicago*, 2010 WL 432313 (N.D. Ill. Feb.3, 2010).

favor of the individuals. *Carter*, 2011 WL 1466599, at *3 ("[T]he fact that Plaintiff's *Monell* claim and his claims against the individual Defendants share a common element . . . is not sufficient to justify bifurcation.").

There is no doubt that *Monell* liability is possible here without a finding of individual liability. For example, one of Plaintiff's Fourteenth Amendment due process claims is based on the treatment of juvenile suspects and witnesses—where they are kept from their parents or guardians while a "Youth Officer" is substituted instead. As Plaintiff has alleged, that Youth Officer is nothing more than a potted plant: he or she acts in concert with the detectives, and does not protect the juvenile's rights. Under this theory of liability, Plaintiff not only alleges that detectives—McDermott and Wilkins—fabricated his confession, but also that the Youth Officer—Napoleon Stevenson— facilitated that fabrication by following the City's widespread custom and policy of using Youth Officers for juvenile interrogations without a parent or guardian that do nothing more than stand in the room (if that). Under the circumstances, a jury's verdict against the City would not be inconsistent with a jury finding in favor of Defendant Stevenson—particularly should Defendant Stevenson seek to invoke qualified immunity.

To take but another example that *Monell* liability is possible without a finding of individual liability, the Court can consider Plaintiff's *Brady* claim. A verdict for Plaintiff on his *Monell* theory that the City's file-keeping system (as well as its general policies) prevented transmission of exculpatory information to criminal defendants would be entirely consistent with a verdict that each individual Defendant did not personally suppress evidence. Put simply, a jury might find that the individuals put items of evidence where they were supposed to in Chicago Police Department files, but that the City had no mechanism for ensuring those files got turned over to Plaintiff or attorneys involved in his criminal prosecution. Indeed, to the extent that there was an alternative offender for

the Shell shooting, as Plaintiff has alleged, that is the very type of information that by City practice would be secreted in a separate street file.

Importantly, Plaintiff has just begun to conduct discovery into these claims and no Individual Defendant or 30(b)(6) Representative has been deposed. "At this early stage of litigation, prior to depositions of any individual defendants and the production of policy and training documents, it is premature to unequivocally state that there can be no municipal liability in the absence of underlying individual liability." *Estate of McIntosh v. City of Chicago*, 15 C 1920, 2015 WL 5164080, at *8 (N.D. Ill. Sept. 2, 2015). Because at this time it is *possible*, however, that an inconsistent verdict would not follow if a jury found the City liable under *Monell* and found in favor of the individual defendants, bifurcation should be denied on this basis as well.

In short, *Monell* liability does not depend on individual liability, a verdict for the individuals will not necessarily dispose of the *Monell* claims, and *Monell* trials will be necessary no matter what. Judge Leinenweber recently heard argument from the City about bifurcating *Monell* claims in *McIntosh*—a wrongful conviction case involving similar *Monell* theories of liability—and he denied bifurcation, reasoning, "It just seems to me that we're going to end up with *Monell* discovery anyway, so you might as well . . . get working on it." Ex. A (Transcript of *McIntosh* Hearing) at 19. The same is true here.[2] The relationship between the individual and municipal claims weighs against bifurcation.[3]

---

[2] Plaintiff's *Monell* theories make this case different than those *Monell* cases cited by the City, such as *Veal v. Kachiroubas*, 2014 WL 321708, at *4 (N.D. Ill. Jan. 29, 2014) and *Andersen v. City of Chicago*, 2016 WL 7240765, at *3 (N.D. Ill. Dec. 14, 2016), where the plaintiff alleged he was wrongly convicted solely because of a false confession. As *Heller* discussed in the excessive force context, 475 U.S. at 799, a claim of municipal liability that depends entirely on an act of an individual cannot proceed in the absence of individual liability. But Plaintiff's *Monell* theories focus on more than individual actions. For example, as explained above, one of Plaintiff's theories is that there was a "code of silence" policy emboldened and incentivized the Individual Defendants to commit the very same types of misconduct alleged in this case. It is possible that a jury could find that the individual defendants without a finding of liability against the Individual Defendants. None of the plaintiffs in *Andersen*, *Harris*, *Veal* or *Taylor* advanced this kind of *Monell* of theory, making them inapposite. By contrast, in cases where plaintiffs advanced this or similar theories, the court denied the City's motion to bifurcate. *See, e.g.*, *Baskins v. Gilmore*, No. 17 C7566, Dkt. 123 (response brief explaining code-of-

## II.  BIFURCATION WILL DUPLICATE THE PROCEEDINGS, WASTE RESOURCES, AND INCONVENIENCE WITNESSES

Because the *Monell* claims in Plaintiff's case will be tried no matter what, the City's proposal means there would be two consecutive proceedings in each case. That would multiply the proceedings, impose huge costs on the Court and the parties, and inconvenience the witnesses—all with very little benefit. Indeed, much of the discovery at issue here—Complaint Register files alleging coercion, fabrication or juvenile abuse—is discovery that the City has already been ordered to produce in other litigation, including with undersigned counsel's firm. As a result, there is little burden to "re-using" that discovery.

### A.  The City's Proposal Would Massively Waste Resources

If the proposed bifurcation were allowed, the parties would engage in two separate rounds of discovery—the first to develop the record necessary for the individual case, and the second to supplement that record with evidence necessary for the *Monell* claims. That would mean two depositions of Defendants and most other witnesses (one about the individual case, and a second about City policies and practices). There would be two rounds of written discovery. Two rounds of Rule 30(b)(6) depositions. Two rounds of expert reports, discovery, and depositions. And during these rounds of discovery there would be motion practice as disputes arose between the parties. Significantly, and different than the instances in which this Court has previously considered bifurcation, this case is proceeding under the District's mandatory discovery pilot. The point of that program is to provide a mechanism for avoiding the slog of discovery operating where parties

---

silence *Monell* theory); *Smith*, No. 16 C 3404, Dkt. 205, at 4-5 (explaining how under code-of-silence theory of liability, a jury's verdict against the City would not be inconsistent with a jury finding in favor of the named Defendant Officers).

[3] Arguments against bifurcation are sometimes based on a contention that the City can still be liable for constitutional violations caused by municipal policies even if qualified immunity is granted to individuals. Though that argument is not necessary to deny bifurcation here, it has force. If immunity is available to the individuals, then that too is a way that the City might be liable even if the individuals are not. *Thomas*, 604 F.3d at 305; *Bell*, 2010 WL 432310, at *3; *Martinez*, 2011 WL 4686438, at *2; *Cage*, 2010 WL 3613981, at *1; *Bradley*, 2010 WL 432313, at *3.

withhold documents or engage in countless disputes. This spirit of that program would be entirely undermined if the City were permitted to proceed with its version of business as usual.

Following each round of discovery, there would be dispositive motions for the Court to resolve. In each case, there would be two rounds of briefing on *Daubert* motions, two separate filings of motions *in limine*, two pretrial orders, and two jury instruction conferences. All of this double work would be avoided if the cases were litigated without bifurcation.

Perhaps most importantly, Defendants' plan would require two trials in each case. This would impose a huge burden on the Court, on witnesses, and on the parties. Each witness would be called twice in each case—once to talk about the facts of the individual case, and a second time to talk about the policies of the City and their impact on the case. Experts would have to fly in twice to testify. Exhibits would be introduced against the individual Defendants and then re-introduced against the City. There would be two rounds of opening and closing arguments. Again, each trial would bring another round of motion practice. Courts have decided in these circumstances that bifurcation makes little sense. *Cadiz v. Kruger*, 2007 WL 4293976, at *5 (N.D. Ill. Nov. 29, 2007); *Awalt*, 2012 WL 1161500, at *10; *Bell*, 2010 WL 432310, at *4.

Moreover, this massive duplication of proceedings and the attendant years-long delay in resolving the case would have occurred even though much of the evidence relevant to the *Monell* theories is admissible against the individual Defendants; and much of the evidence relevant to the individual claims at the first trial must also be presented at the second *Monell* trial. On the former point, evidence of a municipal policy is probative of whether individual Defendants engaged in a course of conduct consistent with those policies. *Coleman v. Peoria*, 2016 WL 5497363, at *6 (C.D. Ill. Sep. 27, 2016) (denying bifurcation because *Monell* evidence was "relevant to the actions of the defendant officers, who would, assuredly, claim to have acted in conformity with sanctioned department policies and practices"). On the latter point, *Monell* requires proof that a policy was the

moving force behind the constitutional violation, *Thomas*, 604 F.3d at 306, and so the *Monell* trial will require evidence about the underlying crimes, investigation, and wrongful conviction. *Houskins v. Sheahan*, 549 F.3d 480, 496 (7th Cir. 2008) (affirming decision not to bifurcate claims because they entailed "an overlap in the facts, evidence, and witnesses required").

Relatedly, the overlap between evidence relevant to claims against the individual Defendants and evidence relevant to *Monell* would spawn disputes that would not exist if bifurcation were denied. In past cases, following bifurcation, defendants have refused to provide discovery on grounds that it relates solely to *Monell* theories. When Judge Lee denied a similar motion to bifurcate in *Sierra v. Guevara*, No. 18 C 3029 (N.D. Ill), he noted: "[I]n my experience, bifurcating *Monell* discovery only tends to prolong the case and leads to unnecessary disputes as to the appropriate scope of non-*Monell* versus *Monell* discovery." Ex. B (Transcript of *Sierra* Hearing) at 4-5; *see also Ott*, 2010 WL 5095305, at *3 (denying bifurcation because it was "likely that bifurcating discovery in this case will lead to more disputes as to whether certain discovery requests relate to the permissible individual claims or the impermissible *Monell* claims"). Bifurcation (or even phased discovery) in Plaintiff's case will "add unnecessary complexity and confusion to the discovery process" and where "discovery disputes are brewing." *Terry*, 2010 WL 2720754, at *3.

The City's proposal would increase the burden on the Court and parties, multiply costs of litigation, and inconvenience witnesses. These burdens would be imposed without any benefit.

## B.    The City's Concerns About Burden Are Misplaced

The City's concerns about the burden of *Monell* discovery are misplaced. First, these concerns fall away once it is clear the *Monell* claims will be tried no matter what, such that the choice is between trying them together with other claims or in the separate proceedings described above.

Second, the City's judicial-economy argument is nothing more than an argument that *Monell* discovery is time consuming and expensive for the City. Dkt. 58 at 7-11. The expense of defending

10

against weighty municipal liability theories—theories on which the City has thrice been found liable in wrongful conviction cases in the last two years—is not a justification for bifurcation. *Awalt*, 2012 WL 1161500, at *10 ("[T]he (often times extraordinary) costs associated with bringing a claim for municipal liability should not sway the Courts' consideration too far."). As a result, properly analyzed, bifurcation will most likely increase the cost of prosecuting and defending the case as a whole. *Clipco v. Ignite Design*, 2005 WL 2861032, at *3 (N.D. Ill. Oct. 28, 2005).

Third, the City argues that eliminating the *Monell* claims will conserve judicial resources because adjudication of discovery, motions, and a trial of those claims will no longer be necessary. Dkt. 58 at 7-8. Not only is that flatly incorrect, for the reasons explained, but it is also a perverse argument that a party should be able to achieve *de facto* dismissal of the claims against it, by way of a motion to bifurcate, by suggesting that it is burdensome for our court system to adjudicate those claims. Particularly so under a federal statute designed to ensure that there is municipal accountability for violations of civil rights. *Owen v. Independence*, 445 U.S. 622 (1980).[4]

Fourth, the City overstates the burden of discovery necessary to try the *Monell* claims. Dkt. 58 at 8-10; *See Cadle*, 2015 WL 6742070, at *2 ("[T]he Court has no doubt that the City has produced similar information in other cases. The incremental burden of doing so again here does not militate heavily in favor of bifurcation."). Indeed, much of the discovery at issue here—*e.g.*, Complaint Register ("C.R.") files relating to allegations of coercion, fabrication and juvenile abuse—are files

---

[4] Plaintiff's *Monell* claim related to the coercion and fabrication of confessions and witness statements is unique in that one of the main Defendants, Detective McDermott, is himself a repeat offender of the City's unconstitutional practice. Defendant McDermott stands out from the pack of other detectives in not only the number of cases based on unconstitutional confessions he obtained or fabricated, but also the manner in which he obtained them. *See* Dkt. 1 at ¶ 70. How the police treat criminal suspects and members of the community is of critical importance to this City and our country, perhaps now more than ever. But even before the current focus on this issue, courts have routinely found that allegations of police misconduct are part of the health and concern of the public and should be exposed. *See, e.g.*, *Wiggins v. Burge*, 173 F.R.D. 226, 230 (N.D. Ill. 1997) ("this Court concludes that the allegations of police misconduct in the disputed documents before the Court must receive public exposure in order to ensure that the significant public interest is served").

that the City has already been ordered to produce in other litigation. For example, in *Hood v. City of Chicago*, No. 16 CV 1970 (N.D. Ill.), the City has been ordered to produce a set of all C.R. files for certain officers, which includes files relating to allegations of coercion, fabrication and abuse that were lodged between 1989 and 1996—the very time frame at issue here. Dckt No. 191, *Hood v. City of Chicago*, No. 16 CV 1970 (N.D. Ill.).[5] There is no reason why those same C.R. files could not be used in this case.

Fifth, the City's complaints about the breadth of Plaintiff' *Monell* discovery requests does not justify bifurcation. Dkt. 58 at 8-10. Plaintiff is always willing to meet and confer to work around legitimate burden objections. For example, as proposed above, the parties may be able to adopt the discovery in *Hood* on the issue of fabrication, coercion and supervision of police officers. Plaintiff is also willing to narrow the scope and time-frame of his *Monell*-related requests after meet-and-confer. By way of example, Plaintiff is willing to narrow RFP No. 25 seeking complaints of other Area 2 officers accused of misconduct to a sample set of CR files if Defendant agrees it will not challenge that set as statistically insufficient to prove the elements of Plaintiff's *Monell* claim. If, after a meet-and-confer, a compromise cannot be reached, then the appropriate scope of discovery is an issue that should be resolved by the normal procedures imposed by the Rules, and not by eliminating the *Monell* claims. *Carter*, 2011 WL 1466599, at *5 (declining to bifurcate because "[t]o the extent that Plaintiff's *Monell* discovery requests are overly broad or would impose undue burden and expense, the court can tailor them as necessary").

---

[5] Those C.R. files relate to detectives who worked in Area 1 from the 1989 to 1996 time period. Of course, the Defendants involved in Plaintiff's case were in Area 2 in 1992, but there is no reason to believe that the practices in Area 2 were somehow different from Area 1. To the contrary, Plaintiff has argued that there was a citywide practice of failing to discipline and supervise, and the use Youth Officers to cover up misconduct.

## III. THE BALANCE OF PREJUDICE WEIGHS AGAINST BIFURCATION

The City also argues that without bifurcation, the Defendants will be prejudiced at trial. Dkt. 58 at 12-13. This argument is without merit and provides no justification for bifurcation. The only potential prejudice is to Plaintiff if the *Monell* claims are bifurcated.

The argument that *Monell* evidence will prejudice the individual Defendants at trial should be rejected. As discussed already, a substantial portion of the *Monell* evidence will be directly relevant to Plaintiff's claims against the individuals, and it is therefore not unfairly prejudicial. Moreover, even if there were a concern about prejudice, that would not justify bifurcation. Instead, limiting instructions are the established mechanism for managing prejudice. FED. R. EVID. 105 (directing district courts to provide instructions to the jury "restrict[ing] the evidence to its proper scope"); *U.S. v. Gomez*, 763 F.3d 845, 860-61 (7th Cir. Aug. 8, 2014); *McLaughlin v. State Farm*, 30 F.3d 861, 870-71 (7th Cir. 1994); *Awalt*, 2014 WL 1161500, at *13.

Any prejudice avoided by bifurcation must be weighed against prejudice to Plaintiff. *Houseman*, 171 F.3d at 1121. Here the only truly unfair prejudice is that which Plaintiff would suffer if bifurcation were granted. First, because the "claims asserted by Plaintiff[s] are interwoven . . . it would be an unreasonable hardship and completely uneconomical to require proof of virtually the same facts in two separate trials." *Ratliff v. Chicago*, 2012 WL 5845551, at *6 (N.D. Ill. Nov. 19, 2012). Second, bifurcation would cause long delays in the resolution of Plaintiff's case, and it would drive up the cost of the litigation. *Clipco*, 2005 WL 2861032, at *3; *Terry*, 2010 WL 2720754, at *2.

The risk of unfair prejudice to Defendants is extremely low, but the prejudice to Plaintiff from bifurcation is obvious and pronounced. The balance of equities favors a unitary proceeding.

## IV. BIFURCATION WOULD VIOLATE THE SEVENTH AMENDMENT

In addition, the City's proposal would require two separate trials, in front of two separate juries, which would each consider the same issues. Both juries would be required to consider

whether and how each Plaintiff's constitutional rights were violated by the suppression of evidence—the first to assess whether the individual Defendants violated their right to due process, and the second to assess whether the City's policies were the cause.

The Seventh Amendment prohibits dividing issues in way that requires a second jury to reexamine an issue decided by the first. *Matter of Rhone-Poulenc Rorer*, 51 F.3d 1293, 1303 (7th Cir. 1995) ("[T]he judge must not divide issues between separate trials in such a way that the same issue is reexamined by different juries."); *see also Blyden v. Mancusi*, 186 F.3d 252, 268-69 (2d Cir. 1999); *Castano v. American Tobacco*, 84 F.3d 734, 751 (5th Cir. 1996); 9A FEDERAL PRACTICE AND PROCEDURE § 2391 (2016). The City's proposal would therefore violate the Seventh Amendment as well.

## V. THE "LIMITED CONSENT TO ENTRY OF JUDGMENT" IS IMPROPER

In an attempt to avoid the problems bifurcation creates, the City attaches what it calls a "Limited Consent to Entry of Judgment" to its motion, by which it states it would accept a judgment against it if the individual Defendants were found liable. Dkt. 58 at 13-14 & Dkt. 59-1, Ex. A. As the Seventh Circuit has observed, this so-called "consent" is not authorized by the Federal Rules, and it is procedurally deficient. *Swanigan*, 775 F.3d at 959-62. It is not a Rule 68 offer of judgment, because it does not satisfy Plaintiff's demands. *Id.* It is not a Rule 16 stipulation agreed upon by the parties, both because it does not stipulate to any facts and because Plaintiff rejects it. Finally, it is not a permissible responsive pleading under Rule 7(a). *Haven v. Polksa*, 215 F.3d 727, 732 (7th Cir. 2000). As a result, the Court should disregard the City's proposed consent entirely.

## VI. OTHER STRONG INTERESTS WEIGH AGAINST BIFURCATION

Lastly, Plaintiff has other strong interests that weigh against bifurcation. For starters, the City contends that Plaintiff have nothing to gain from a verdict against the City if they first succeed against the individual Defendants. Dkt. 58 at 13. But that is not so. A *Monell* verdict would

independently support a judgment, even if the court of appeals reversed on individual liability, for example.

Moreover, Plaintiff has strong non-economic interest in preventing future constitutional violations, particularly wrongful convictions. Deterrence of constitutional misconduct is a fundamental purpose of section 1983. *Owen*, 445 U.S. at 627 ("[Section 1983] was intended not only to provide compensation to victims of past abuses, but to serve as a deterrent against future constitutional deprivations[.]"); *see also Monterey v. Del Monte Dunes*, 526 U.S. 687, 727 (1999); *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). "Some cases have remedial import beyond the individual plaintiff's claim for monetary damages, and § 1983 provides a vehicle for obtaining other judicial relief against governmental policies that violate constitutional rights." *Swanigan*, 775 F.3d at 962; *Medina v. Chicago*, 100 F. Supp. 2d 893, 896 (N.D. Ill. 2000). This case concerns a wrongful conviction caused by City policies that deprived countless men of fair trials and allowed dangerous officers like McDermott to terrorize the community with impunity. The stakes in a civil rights lawsuit will rarely be higher than they are here, and the *Monell* claims at issue are of profound importance to future institutional reform. Courts have recognized that lawsuits like this "can be distinguished from other lawsuits against the City in which district courts have bifurcated *Monell* claims." *Smith*, No. 16 C 3404, Dkt. 205, at 2. The strong non-economic objectives of Plaintiff's cases also weigh against bifurcation.

## Conclusion

The City cannot avoid litigation over its role in Plaintiff's wrongful conviction and nearly two decades of imprisonment. Plaintiff is entitled to discovery and a trial against the City, whose motion should be denied.

15

RESPECTFULLY SUBMITTED,

/s/ Danielle Hamilton
Jon Loevy
Gayle Horn
Tara Thompson
Danielle Hamilton
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
(312) 243-5900
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I, Danielle Hamilton, an attorney, hereby certify that on May 28, 2019, I filed the foregoing pleading using the Court's CM/ECF system, which effected service on all counsel of record.

/s/ Danielle Hamilton
*One of Plaintiff's Attorneys*

16