**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KEHINDA MITCHELL, | |
| Plaintiff, | |
| v. | |
| CITY OF CHICAGO, Chicago Police Detectives MICHAEL MCDERMOTT, ANDY JONES, K. GLYNN, and JACK WILKINS, Youth Officer NAPOLEON STEVENSON, and Officer K. GROSS, Cook County Assistant State's Attorney SHARON JEFFERSON, COOK COUNTY, ILLINOIS, and Unknown Current or Former Employees of the City of Chicago, | **Case No. 18-cv-07357**<br><br>**The Honorable Gary Feinerman** |
| Defendants. | |

**DEFENDANT CITY OF CHICAGO'S REPLY
IN SUPPORT OF ITS MOTION TO BIFURCATE PLAINTIFF'S
*MONELL* CLAIM AND STAY DISCOVERY AND TRIAL ON THAT CLAIM**

The City,[1] by its attorneys, Greenberg Traurig, LLP, submits this Reply in Support of its Motion to Bifurcate Plaintiff's *Monell* Claim ("Motion") and Stay Discovery and Trial on that Claim, and states as follows.

## INTRODUCTION

Plaintiff's Response to the Motion for Bifurcation ("Response") is unpersuasive for several reasons. First, Plaintiff's assertion that, pursuant to *Thomas v. Cook Cty. Sheriff's Dept.*, 604 F.3d 293 (7th Cir. 2009), his *Monell* claim will be tried even if the Defendant Officers prevail, ignores the numerous opinions issued post-*Thomas* that establish that the *Thomas* opinion relating to inconsistent verdicts is inapplicable to cases in which the plaintiff's *Monell* theory is not factually distinct from the claims made against the individual defendants.

---

[1] All terms defined in the City's Motion for Bifurcation and Memorandum of Law filed in support thereof shall have the same meanings in this Reply brief.

Second, Plaintiff demonstrates a fundamental misunderstanding of the City's Limited Consent to Entry of Judgment ("Consent to Entry"), as well as applicable Seventh Circuit authority, by failing to appreciate that pursuant to the Consent to Entry's terms, there will be no need to try this case a second time under any circumstances, including if the Defendant Officers are granted qualified immunity. Further, there is no question that *Monell* discovery would be burdensome and the trial would be significantly longer, factually more complicated, and time consuming for all if the *Monell* claim is tried simultaneously with Plaintiff's underlying claims, a result that is not necessary or prudent given the City's proposed Consent to Entry.

Third, the prejudicial value to the Defendant Officers should the *Monell* claim be tried together with the narrow individual claims would be insurmountable. In order for Defendant Officers to get a fair trial, they should be permitted to stand on their own actions, and not rebut allegations relating to cases that have no direct bearing on Plaintiff's lawsuit.

Finally, Plaintiff's non-economic benefits will not be thwarted because the City's Consent to Entry is incentive enough to prevent future violations and is proper under the law. For these reasons, and as detailed more fully below, the City respectfully requests that the Court grant its Motion to Bifurcate, and enter the Consent to Entry.

## ARGUMENT

### A. INDIVIDUAL LIABILITY ON PLAINTIFF'S CLAIMS IS A NECESSARY PREDICATE FOR A FINDING OF *MONELL* LIABILITY AGAINST THE CITY.

Plaintiff's assertion that, pursuant to *Thomas*, he would be permitted to proceed against the City even without establishing liability against the Defendant Officers is flat wrong. 604 F.3d 293, 305 (7th Cir. 2009). While *Thomas* did leave the door open for finding liability against a municipality in the absence of liability against individuals, the holding was narrow and could only be applied when the outcome did not result in inconsistent verdicts. *Id.* However, based on

2

Plaintiff's allegations, it is impossible to find for the Defendant Officers and against the municipality without creating inconsistent verdicts, as confirmed by decisions subsequent to *Thomas*, some of which are cited below.

It is apparent that all of the unconstitutional policies and practices alleged in Plaintiff's Complaint are dependent upon the liability of Defendant Officers. In his Response, Plaintiff argues that the City could be held liable under *Monell* in relation to the City's file-keeping system preventing the transmission of exculpatory information to criminal defendants, without any finding of individual liability. (Response at 6-7). First, Plaintiff's Complaint does not contain any allegation that the City had "file-keeping" policies or practices that prevented Plaintiff from receiving exculpatory information. However, even if Plaintiff did assert such an allegation, this argument has been routinely rejected by the courts including in *Andersen v. City of Chicago* where the plaintiff was represented by Plaintiff's counsel in this case. No. 16 C 1963, 2016 WL 7240765, at *3 (N.D. Ill. Dec. 14, 2016). In *Andersen*, the plaintiff alleged that the City's policies were the moving force behind the individual officers failing to disclose exculpatory evidence to the defense. *Id.* at *2-3. The court held that any harm caused by such a policy or practice could only manifest itself through the Defendant Officers actually withholding the exculpatory information, and "therefore a finding of municipal liability is predicated on a finding first that the Officers themselves were liable." *Id.* at 4.[2]

Similarly, in *Williams v. City of Chicago*, the court examined the effect of *Thomas* on a *Monell* claim relating to a policy of failing to preserve and produce exculpatory evidence. 315 F. Supp. 3d 1060, 1080 (N.D. Ill. 2018). The court held: "[a]ny harm caused by a policy or

---

[2] Plaintiff also argues that if "immunity is available to the individuals, then that too is a way that the City might be liable even if the individuals are not." (Response at 8). This argument has also been rejected by the courts, specifically in cases where the defendant has consented to entry of judgment against itself in the event that the individual officers are found to have violated the plaintiff's constitutional rights, as the City has in this case. *Andersen*, 2016 WL 7240765, at *4; *see also Williams*, 315 F. Supp. 3d at 1081.

practice to withhold from discovery or not preserve exculpatory evidence…could only manifest itself through the Officers actually withholding such evidence…and therefore a finding of municipal liability is predicated on a finding first that the Officers themselves were liable." *Id.* at 1081; *see also Taylor v. Kachiroubas*, No. 12 C 8321, 2013 WL 6050492, at *4 (N.D. Ill. Nov. 15, 2013) ("the actions of the individual officers in collecting and fabricating evidence against [the plaintiffs] are the source of the alleged harm to the plaintiffs, and any 'policy' exerted harm through those actions, not independently of them. It follows that, if the individual officers prevail on the question of whether they violated [the plaintiffs'] constitutional rights, the time and expense required to litigate the claims against the [defendant], as well as the supervisory liability claims, would be saved.").[3]

Here, Plaintiff alleges that Defendants "conspired to deprive Plaintiff of exculpatory information to which he was lawfully entitled and which would have led either to his not being charged, his acquittal, or his more timely exoneration." (Compl., ¶ 110). Pursuant to the relevant case law, there must be a finding of liability against Defendant Officers that they conspired "to deprive Plaintiff of exculpatory information" for there to be any finding of liability against the City. The only harm that could be caused by a City's policy or practice to withhold discovery from Plaintiff could have only manifested itself through Defendant Officers deliberately withholding such evidence. *Williams*, 315 F. Supp. 3d at 1081. If Defendant Officers are not found liable for withholding exculpatory evidence, then any *Monell* verdict against the City

---

[3] In addition, Plaintiff argues that because he alleges there was a "code of silence," this could cause a jury to find the City liable without a finding of individual liability. (Response at 7). Courts have also rejected this argument. *See Claxton v. City of Chicago,* No. 14 C 10076, 2015 WL 5304630 at *1 (N.D. Ill. Sept. 9, 2015) ("The alleged harm to Plaintiffs was not caused independently by these alleged City [code of silence] policies but rather through the Officer Defendants' actions, and thus the Officer Defendants must first be found liable before the City may be held liable on Plaintiff's *Monell* claims.") *see also Harris v. City of Chicago*, No. 14 C 4391, 2016 WL 3261522, at *1-4 (N.D. Ill. June 14, 2016) (holding that "the disposition of the individual claims will essentially end the litigation" against the City including the plaintiff's allegation of a "code of silence").

relating to its file-keeping policies would be inconsistent. If the jury finds that the Defendant Officers did not withhold evidence, the time and expense required to litigate the claims against the City would be saved. *Taylor*, 2013 WL 6050492, at *4.

Plaintiff also argues there could be *Monell* liability without a finding of individual liability based on the City's policy of using Youth Officers for juvenile interrogations. (Response at 6). Yet this argument fails for the same reasons: any harm that could be caused by such a policy or practice could only be manifested through a Defendant Officer. *Williams*, 315 F. Supp. 3d at 1081. Plaintiff alleges that the Youth Officer, Defendant Stevenson, "did nothing to prevent his false confession [and] [t]o the contrary…also fabricated that Plaintiff confessed..." (Compl., ¶¶ 43-44). Plaintiff's allegations against the Youth Officer stem from his primary allegation that Defendant Officers fabricated his confession. Thus, if the jury finds that Defendant Stevenson is not liable (*i.e.* he did not fabricate Plaintiff's confession), that would certainly be inconsistent with any verdict against the City relating to its policy of using Youth Officers for juvenile interrogations. If a jury does not find individual liability on the part of the Youth Officer, there can be no finding of liability based on the City's Youth Officer policy.[4]

Without a finding of liability against Defendant Officers, it would be inconsistent for the jury to find that the City had the widespread practices, policies, and customs alleged in Plaintiff's Complaint causing the constitutional violations. Plaintiff is aware that his claims against the Defendant Officers are not factually distinct from his *Monell* claim as evidenced by his citation to the Seventh Amendment in the Response. Plaintiff argues that bifurcation would violate the

---

[4] The Seventh Circuit has also found that a *Monell* claim based upon unconstitutional use of force policies, or the failure to investigate or discipline for use of excessive force, cannot prevail without a finding of liability as to the individual defendants. *See Thompson v. Boggs*, 33 F.3d 847, 858-59 (7th Cir. 1994); *see also Carr v. City of N. Chicago*, 908 F. Supp. 2d 926, 930 (N.D. Ill. 2012); *Readus v. Dercola*, No. 09 C 4063, 2012 WL 1533167 at *3 (N.D. Ill. May 1, 2012). The Seventh Circuit has reached the same finding regarding *Monell* claims based upon a failure to train. *Sallenger v. City of Springfield, Ill.*, 360 F.3d 499, 504 (7th Cir. 2010).

Seventh Amendment because it would require "two separate trials, in front of two separate juries, which would each consider *the same issues*." (Response at 13-14) (emphasis added).[5] Plaintiff's Response only further highlights that *Monell* liability hinges on the determination of individual liability because they are based on "the same issues."

Liability against the Defendant Officers is a necessary predicate for municipal liability in this case. Thus, bifurcating the *Monell* claim and staying discovery until the final determination of Defendant Officers' liability serves the economic interests of this Court and all parties.

**B.    BIFURCATION WILL PROMOTE EFFICIENCY AND JUDICIAL ECONOMY.**

Plaintiff misunderstands the plain language and import of the Consent to Entry when he asserts in his Response that the "*Monell* claims in Plaintiff's case will be tried no matter what…" (Response at 8). As discussed *supra*, any *Monell* liability depends on individual liability, and a verdict for Defendant Officers will necessarily dispose of the *Monell* claim. There would therefore be no need for "two consecutive proceedings," "two rounds of written discovery" or "two trials" as Plaintiff contends. (*Id.* at 7-9).

Further, if the jury found any Defendant Officer to be liable, the Consent to Entry provides that the City would agree to accept judgment.[6] (Consent to Entry, ¶ 3). The City further agrees to accept judgment even if a determination is made that, notwithstanding a finding of liability, the Defendant Officer successfully asserts qualified immunity. (*Id.*, ¶ 5). Thus, Plaintiff has a path to a judgment against the City without being required to satisfy the heightened burden of demonstrating a widespread pattern or practice of a constitutional violation. *See Walden v.*

---

[5] Granting the City's Motion will not "require two separate trials" as Plaintiff suggests, and Plaintiff's argument that bifurcation is a violation of the Seventh Amendment is without merit. (Response at 13-14).
[6] Bifurcation of Plaintiff's *Monell* claim will not affect Plaintiff's recovery of any compensatory damages that a jury may award him. Plaintiff is not entitled to recover any additional compensatory damages if he prevails against the City on his *Monell* claim after a finding of liability against the Defendant Officers. *See* 745 ILCS 10/9-102.

*City of Chicago*, 755 F.Supp.2d 942, 969 (N.D. Ill. 2010). Given that Plaintiff's *Monell* claim will result in burdensome discovery that can be eliminated through the use of the City's proposed Consent to Entry, bifurcation is the most efficient and practical course of action for all parties involved.

Plaintiff also makes an effort to minimize the significant amount of evidence that will need to be presented to the jury (putting aside the voluminous amount of pre-trial motions) if the *Monell* claim moves forward. Time and time again, courts have recognized the significant burden of *Monell* claims. *See Carr v. City of N. Chicago*, 908 F. Supp. 2d 926, 933 (N.D. Ill. 2012) ("*Monell* discovery 'can add significant time, effort, and complications to the discovery process.'"), quoting *Medina v. City of Chicago*, 100 F.Supp.2d 893, 895 (N.D. Ill. 2000).

Plaintiff's current *Monell* claim is premised on multiple alleged widespread policies, practices, and customs of the City, including: failing to adequately train, supervise, and discipline Police Officers, who engaged in: physical abuse, psychological intimidation and manipulation, fabrication of confessions, concealment of exculpatory information, false promises of leniency in exchange for cooperation in the form of a statement, use of other unlawful tactics to secure the arrest, prosecution, and conviction of persons without regard to their actual guilt, and a police "code of silence." (Compl., ¶¶ 68-82; 115-119). The first alleged policy claim alone contains six different methods by which the City is allegedly committing three different unconstitutional actions. Further, Plaintiff alleges these unlawful policies and practices were in existence for many years prior to this alleged incident and Plaintiff has already propounded discovery requests spanning over 30 years; the proposed temporal scope of Plaintiff's *Monell* claim is vast. (*Id.* at ¶ 70). Given the wide scope of these allegations, the City will be required to obtain, review, and produce an exorbitant number of documents. The City will also need to

disclose and make available for deposition high ranking Chicago Police Department employees or City officials to defend its case against these *Monell* allegations. This will undoubtedly slow down the discovery process and delay the resolution of this case.

Plaintiff contends that the City overstates the burden of discovery necessary to try the *Monell* claim and that "much of the discovery at issue *e.g.*, CR files…are files that the City has already been ordered to produce in other litigation." (Response at 11-12). Plaintiff also offers to meet and confer on its overly broad and burdensome requests for CR files. (*Id.*). Yet, CR files are only the tip of the iceberg in relation to Plaintiff's *Monell* allegations. Plaintiff fails to recognize the additional number of documents and witnesses needed to demonstrate that there was no widespread practice of coercive interrogations including those already requested by Plaintiff: *e.g.* (1) "describe every instance between 1982 and present day in which [a policymaker] undertook to review, investigate, analyze, uncover, prevent, or determine the prevalence of any misconduct, deficiency, shortcoming, or other problem relating to" policies or procedures identified by Plaintiff; (2) "describe any and all changes made between 1982 and present day to the CPD's policies, practices, and training programs"; and (3) for each change, "describe how CPD employees or agents were made aware of the changes" and the dates when they were made aware of the changes. (Motion, Ex. C, Interrog., at ¶¶ 13-14; *see also e.g.* ¶¶ 8, 17-19, *see also* ¶ 12 ("identify the "policymaker(s) who were responsible for or who had final policymaking authority for those policies or procedures from 1982 through present day")). Plaintiff's Response does not acknowledge the massive discovery burden that the *Monell* claim would present, and Plaintiff's first set of discovery requests underscores that burden.

Moreover, at trial, the City would need to defend each of these *Monell* allegations, and this would involve explaining to the jury why a pattern of unconstitutional conduct cannot be

discerned by cherry picking isolated incidents. This would add weeks to the trial. *See Claxton*, 2015 WL 5304630 at *2 (putting *Monell* issues into play during the trial "will make the case more complicated and potentially cause juror confusion."). By way of example, the following is a non-exhaustive list of topics that will not need to be addressed at trial if the City's Motion is granted:

- Motions to exclude references to Jon Burge;[7]

- Motions to exclude references to cases wherein a confession was allegedly procured by torture;

- Motions limiting the temporal scope of the *Monell* evidence that is presented to the jury;

- An alleged "code of silence" that Plaintiff asserts exists within the Chicago Police Department;

- Supervision of Homicide Detectives and Youth Officers;

- Training of Homicide Detectives and Youth Officers;

- The discipline of Police Officers who are not parties to this case;

- Chicago Tribune articles criticizing the Chicago Police Department;[8]

- The circumstances of the Chicago Police Department's investigation and post-conviction proceedings related to numerous third parties including those already identified in Plaintiff's Complaint: Alfonso Pinex, Joseph Carroll, Cersenia Blackburn, Anthony Holman, Franklin Burchette, Andrew Maxwell, Gregory Howard, Jerry Thompson, Daniel Vaughn, Virgil Bass, David Randle, Christopher Askew, Shadeed Mumin, Anthony Daniels, Sheila Daniels, Tremmel Broadwater, Tony Anderson. (Compl. ¶ 70).

Plaintiff also argues that the consequential costs and judicial resources associated with not bifurcating Plaintiff's *Monell* claim are not a justification for bifurcation. (Response at 11).

---

[7] In support of Plaintiff's *Monell* claim, it is evident that he intends to rely heavily on cases in which Jon Burge or a member of his team allegedly procured a confession by torturing an arrestee, notwithstanding that those Police Officers were not working at the police station for several years before Plaintiff's arrest and conviction. (Compl., ¶¶ 64, 70). The City intends to move to exclude any reference to Jon Burge or torture cases prior to trial.

[8] The City also intends to move to exclude any reference to these articles.

In support of this argument, Plaintiff cites two cases: *Clipco v. Ignite Design* and *Awalt v. Marketti*. (*Id.*). *Clipco* is a patent case and has little application to a case involving a *Monell* claim against the City of Chicago. No. 04 C 5043, 2005 WL 2861032, at *3 (N.D. Ill. Oct. 28, 2005). As for *Awalt,* the court considered a motion to bifurcate the *Monell* claim and held that "considerations of the cost of the defense is one concern to take into account." No. 11 C 6142, 2012 WL 1161500, at *10 (N.D. Ill. Apr. 9, 2012). Although the court ultimately found that "those considerations dissipate if it is determined that the parties may have to litigate the *Monell* claims irrespective of the bifurcation decision," the plaintiff's *Monell* claims in *Awalt* were distinct from her claims against the individual defendants. *Id.* at 11. *Awalt* was a medical care case similar to *Thomas* and is inapposite to this case because, as discussed *supra*, Plaintiff's *Monell* claim is predicated on individual liability and the parties here will not need to "litigate the *Monell* claims irrespective of the bifurcation decision" like they did in *Awalt*. *Id.*

In reality, avoiding unnecessary costs and expenditure of judicial resources is one of the overt purposes of bifurcation. Indeed, the Seventh Circuit has explicitly endorsed bifurcation as a means to avoid "the waste of the valuable time and resources of the court…" *Treece v. Hochstetler*, 213 F.3d 360, 365 (7th Cir. 2000). Also, in *Swanigan v. City of Chicago*, the Seventh Circuit found that the district court's decision to stay *Monell* discovery was "sensible, especially in light of the volume of civil-rights litigation that district courts must manage" and the stay of *Monell* claims in cases where the *Monell* claims are not factually distinct from the claims against the individual defendants "achieve[s] the goal of avoiding unnecessary complexity and effort." 775 F.3d 953, 962-63 (7th Cir. 2015).

There is no question that judicial economy supports the prudence of granting the City's Motion. The bifurcation of the *Monell* claim will achieve the goal of avoiding unnecessary

complexity and effort, as well as obviate the need for the parties to spend undue time and money litigating a *Monell* claim that is not factually distinct from the claims against Defendant Officers.

C.     BIFURCATION WILL PREVENT UNDUE PREJUDICE TO THE DEFENDANT OFFICERS.

If Plaintiff's *Monell* claim is permitted to proceed, the trial will consist of numerous mini-fact patterns that must be presented to the Court. For obvious reasons, the admission of this type of evidence would be highly prejudicial to the Defendant Officers, and would surely deprive them of a fair trial. A jury hearing extensive evidence in support of alleged policies and incidents involving other Police Officers and different factual circumstances than the case at hand will cause the jury to be confused as to the true issues related to Defendant Officers. *See Ackerman v. Allen*, No. 16 C 6199, 2017 WL 1536447, at *5 (N.D. Ill. April 27, 2017). Courts have broad discretion in deciding whether to bifurcate issues presented in a case. *Demouchette v. Dart*, No. 09 C 6016, 2011 WL 679914, at *2 (N.D. Ill. Feb. 16, 2011). "A court must determine if separate trials would avoid prejudice to a party or serve the purpose of judicial economy, though only one of these criteria need be met." *Id.* citing *Houseman v. U.S. Aviation Underwriters,* 171 F.3d 1117, 1121 (7th Cir. 1999).

The possibility of introducing evidence of allegedly unlawful conduct by "other Chicago police officers raises legitimate concerns about the individual defendants' ability to distinguish their own alleged unconstitutional acts from those of non-party officers. This concern warrants a finding that some prejudice could result absent bifurcation of the *Monell* claims." *Castillo v. City of Chicago*, No. 11 C 7359, 2012 WL 1658350, at *6 (N.D. Ill. May 11, 2012).

Although Plaintiff asserts that curative jury instructions would alleviate this prejudice (Response at 13), many courts have recognized that such instructions are not sufficient to cure the prejudice resulting from the jury potentially hearing decades worth of information unrelated to the underlying constitutional violation, most of which took place years before Plaintiff's arrest

and conviction. Two recent cases are instructive on this issue. In *Saunders v. City of Chicago*, the plaintiffs initiated actions alleging they made self-incriminating statements because they were subjected to unconstitutional interrogation methods. 146 F. Supp. 3d 957 (N.D. Ill. 2015). The plaintiffs' *Monell* claim was predicated on an alleged failure to adequately train, supervise, and discipline Police Officers who engaged in alleged constitutional violations. *Id.* at 961. The court acknowledged that it could use limiting instructions to cure the prejudicial impact of the presentment of *Monell* evidence on the individual defendants but the court, nonetheless, granted the motion to bifurcate, in recognition of the "potential prejudice to the individual Defendants." *Id.* at 971. The *Claxton* court reached the same conclusion in another similar fact pattern, determining that the introduction of evidence of non-party Police Officers' actions would be unduly prejudicial to the individual defendants. 2015 WL 5304630 at *2.

Like the *Saunders* and *Claxton* defendants, the Defendant Officers should not be saddled with the alleged acts and omissions of those who came before or after them. They should be permitted to present the facts of this case to the jury, without confusing them with allegations that have nothing to do with Plaintiff. Introduction of *Monell* evidence will prejudice the Defendant Officers in a way that cannot be fixed with a jury instruction, and the likelihood of prejudice warrants granting the City's Motion.

**D.     PLAINTIFF'S NON-ECONOMIC BENEFITS WILL NOT BE THWARTED BECAUSE THE CITY'S LIMITED CONSENT TO ENTRY OF JUDGMENT IS INCENTIVE ENOUGH TO PREVENT FUTURE VIOLATIONS.**

Plaintiff argues that bifurcating the *Monell* claim will eliminate his opportunity to expose the City's alleged unconstitutional practices and, thus, deprive him of pursuing non-economic

benefits of his *Monell* claim, such as preventing possible future violations.[9] (Response at 15). In *Parker v. Banner*, the court addressed this same issue and held that the payment of compensatory damages was incentive enough to prevent future violations because "the City will have to pay damages and, if damages grow too large, then the City will change its policies, customs and practices." 479 F. Supp. 2d 827, 829 (N.D. Ill. 2007); *see also Horton v. City of Chicago*, No. 13 C 6865, 2016 WL 316878, at *6 (N.D. Ill. Jan. 26, 2016) (same). The *Parker* court posited the plaintiff's true objective as such: "Plaintiff wants a piece of paper saying that the City acts unconstitutionally. I do not know exactly why he wants that paper, but securing a verdict or opinion for the sole purpose of having those words does not create a case or controversy…" *Id.* at 834.

Similarly, a finding that the City violated Plaintiff's constitutional rights is nothing without some form of monetary damages, which the City is willing to provide through its proposed Consent of Entry. Plaintiff cites *Owen v. City of Indep.* to support his argument that deterrence of constitutional misconduct is a fundamental purpose of Section 1983. 445 U.S. 622, 625 (1980). However, *Parker* examined *Owen* and the same Section 1983 argument made by the plaintiff; the court held:

> In this case, the City has already stipulated that it would pay whatever compensatory damages are awarded for the actions of its employees. If a constitutional violation occurred, then the City pays. In my view, that is all *Owen* requires. The idea that the Supreme Court requires some extra incentive to deter cities from allowing their employees to violate rights is inconsistent with its policy of immunizing cities from punitive damages. 479 F. Supp. at 829 citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 259–71, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981).

---

[9] The City also requests that this Court take judicial notice of a federal consent decree recently entered that encompasses a wide range of police reforms of the City of Chicago and the Chicago Police Department. The consent decree requires comprehensive actions and appointed an independent monitor to provide independent oversight of the various reforms.

As such, Plaintiff's non-economic incentives for pursuing his *Monell* claim will not be thwarted by bifurcation because the City's Consent to Entry will provide a deterrence effect for future violations by requiring the City to pay compensatory damages for the actions of the Defendant Officers.

**E.    THE LIMITED CONSENT TO ENTRY OF JUDGMENT IS PROPER.**

Given the numerous cases noted above in which the courts have entered a similar stipulation to consent of judgment offered by the City, it is difficult to understand how Plaintiff can argue that it is procedurally deficient. (Response at 14). Plaintiff cites *Swanigan* to argue that the Consent to Entry is not a Rule 68 offer of judgment because it does not satisfy Plaintiff's demands. 775 F.3d at 959-62. Yet, if Plaintiff prevails against the Defendant Officers, the Consent of Entry actually satisfies all of Plaintiff's demands: compensatory damages and attorneys' fees. (Compl. at 39; Consent to Entry, ¶ 6). Unlike the plaintiff in *Swanigan*, Plaintiff did not sue for declaratory or injunctive relief under Section 1983, and all of his demands would be satisfied under the Consent to Entry. (Compl. at 39). The Consent to Entry is proper under the law and should be entered.

<u>CONCLUSION</u>

For the foregoing reasons, the City of Chicago respectfully requests that this Court (1) bifurcate Plaintiff's *Monell* claim pursuant to Rule 42(b); (2) stay discovery and trial on Plaintiff's *Monell* claim; and (3) enter the City's proposed "Consent to Entry of Judgment Against Defendant City of Chicago," attached as Exhibit A to the City's Motion.

Dated: June 11, 2019

Respectfully submitted,

*/s/ Kyle L. Flynn*
John F. Gibbons
Kyle L. Flynn
Thomas Q. Ford
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
T: (312) 456-8400
F: (312) 456-8435
gibbonsj@gtlaw.com
flynnk@gtlaw.com
fordq@gtlaw.com
Attorneys for Defendant City of Chicago

<u>**CERTIFICATE OF SERVICE**</u>

      I, Kyle L. Flynn, certify that on June 11, 2019, a true and correct copy of **Defendant City of Chicago's Reply in Support of its Motion to Bifurcate Plaintiff's *Monell* Claim and Stay Discovery and Trial on that Claim** was served electronically through the Northern District of Illinois CM/ECF electronic filing on all counsel of record.


          */s/ Kyle L. Flynn*